IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HOLLIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 9050 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| COOK COUNTY, ILLINOIS, THE SHERIFF | ) | |
| OF COOK COUNTY, ILLINOIS, former Cook | ) | |
| County Sheriff DENNIS THOMPSON, Cook | ) | |
| County Deputy Sergeant BRAZELTON, Cook | ) | |
| County Sheriff Deputy FELIX, Cook County | ) | |
| Cermak Medical Assistant, VASQUEZ, Cook | ) | |
| County Cermak Doctor MARI, Cook County | ) | |
| Cermak Doctor MACNEAL, AS-YET | ) | |
| UNKNOWN COOK COUNTY SHERIFF | ) | |
| DEPARTMENT AND CERMAK EMPLOYEES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a former Cook County Jail inmate, John Holliman filed an eight-count first amended complaint alleging various violations of 42 U.S.C. § 1983 and state laws. Pursuant to federal law, plaintiff alleges that: (a) defendant Dennis Thompson violated his Fourth Amendment right to be free from unreasonable searches and seizures (Count I); and (b) defendants Thompson, Brazelton, Felix, Vasquez, Mari, and MacNeal[1] violated his Fourteenth Amendment right to due process (Count II), conspired to violate his constitutional rights (Count III), and failed to intervene to prevent the violation of his constitutional rights (Count IV). Plaintiff seeks to hold Cook County and the Cook County Sheriff (the "Sheriff") liable for each of the alleged § 1983 violations pursuant to Monell v. Dep't of Social Services of City of

---

[1] Hereafter, the court will refer to defendants Brazelton, Felix, Vasquez, Mari, and MacNeal as the "individual defendants" and to defendant Thompson as "Thompson."

New York, 436 U.S. 658 (1978).[2] Plaintiff further asserts a state law assault and battery claim against Thompson (Count V) and alleges that Thompson and the individual defendants conspired to act in an unlawful manner towards him (Count VI). Plaintiff also asserts respondeat superior (Count VII) and indemnification (Count VIII) claims against the Sheriff and Cook County. Defendants have moved to dismiss plaintiff's claims.[3] For the reasons discussed below, the court grants in part and denies in part defendants' motions.

## BACKGROUND[4]

As discussed in more detailed below, in light of the relief plaintiff seeks, the facts alleged in the first amended complaint are sparse. Plaintiff alleges that on a daily basis between November 2013 and July 2014 he "was repeatedly sexually abused by former correctional officer Dennis Thompson while incarcerated at the Cook County Jail." According to the first amended complaint, the sexual abuse ceased "only when Plaintiff was transferred to the Illinois Department of Corrections." Plaintiff alleges that Thompson resigned from his position as a

---

[2] Because, as discussed below, the first amended complaint does not clearly identify which count is asserted against which public entity defendant, the court assumes for purposes of defendants' motions that plaintiff seeks to hold both Cook County and the Sheriff liable for each of his § 1983 claims.

[3] Cook County and the individual Cermak defendants seek to dismiss all of the claims against them. (Doc. 49.) The Sheriff and the individual Sheriff defendants also seek to dismiss all of the claims against them. (Doc. 45.) Defendant Thompson seeks to dismiss Counts II through VI of plaintiff's first amended complaint. (Doc. 52.) In his response brief, plaintiff agrees that dismissal of Count IV with respect Thompson is proper. Accordingly, Thompson's motion is granted with respect to that count.

[4] The following facts are taken from plaintiff's first amended complaint and are assumed to be true for purposes of defendants' motions to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

2

Cook County Sheriff's Deputy in October 2014, following an internal investigation of his conduct, and that he currently faces a criminal investigation by the State's Attorney's Office.

The first amended complaint alleges that the abuse plaintiff suffered occurred in Division 2 of the Cook County Jail, which is where detainees who require medical treatment are housed. Plaintiff alleges that "Thompson was assigned to the Division #2 Dispensary and utilized his position to ensure that Plaintiff, who required medical treatment, received his medical treatment during his shift." According to the complaint, "Thompson repeatedly ensured that he was inappropriately alone with Plaintiff while Plaintiff was in the Division #2 Dispensary, a fact that was known or should have been known to the Individual Defendants, who took no steps to intervene or prevent the abuse from occurring."

## DISCUSSION

**1.    Legal Standard**

When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when

3

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**2. Analysis**

**A. Statute of Limitations - Counts V-VIII**

Each defendant argues that plaintiff's state law claims are time-barred pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"), 745 ILCS 10/8-101(a). Although affirmative defenses, such as the statute of limitations, are not usually resolved through a motion to dismiss, if the plaintiff's complaint contains facts that on their face demonstrate the suit is time-barred, it may be disposed of under Rule 12(b)(6). See Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 608 (7th Cir. 1995). The parties agree that Illinois law generally requires a civil action against a local entity or any of its employees for an injury to be filed within one year from the date of the injury. 745 ILCS 10/8-101(a). The first amended complaint alleges that the tortious conduct last occurred in July 2014, but plaintiff's original complaint was not filed until October 2015. Accordingly, plaintiff's state law claims for assault and battery, conspiracy, and respondeat superior[5] – each of which are asserted against public entities or their employees – are time barred pursuant to 745 ILCS 10/8-101(a).

---

[5] As is well established in this circuit, "respondeat superior is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." Monell, 436 U.S. at 663 n.7. Plaintiff's respondeat superior claim is therefore covered by the Tort Immunity Act, and is subject to the same one-year statute of limitations. See, e.g., Randle v. City of Chicago Illinois, No. 00-C-299, 2000 WL 1536070, at *3 (N.D. Ill. Oct. 17, 2000); Svoboda v. Metropolitan Water Reclamation Dist. of Greater Chicago, No. 08-C-0783, 2009 WL 367760, at *2 (N.D. Ill. Feb. 13, 2009).

Plaintiff, however, argues that his state law claims may fall within an exception to the Tort Immunity Act, which provides for a two-year statute of limitations where the injury "aris[es] out of patient care." 745 ILCS 10/8-101(b). According to plaintiff, his state law claims should not be dismissed until discovery can be completed into whether the alleged torts arose out of the medical care he received. Plaintiff contends that his "claims involve a conspiracy of medical employees working in concert to allow for abuse to occur and repeatedly continue – all while [he] was under their medical care." Plaintiff also contends that Thompson had access to him because of his need for medical care and that the other individual defendants used their positions and authority in the medical unit dispensary to allow the abuse to occur. Plaintiff argues that discovery will reveal how the defendants "utilized their medical position to violate [his] rights, and how such violations 'originated in, stemmed from, or resulted from' his medical care." The court disagrees.

As discussed by the Illinois Supreme Court in <u>Kaufmann v. Schroeder</u>, 241 Ill.2d 194, 200 (2011), the intent of the state legislature in adding subsection (b) to the Tort Immunity Act was to bring the act into conformity with the two-year statute of limitations for medical malpractice claims. According to the <u>Kaufmann</u> court, the addition of subsection (b) to the Tort Immunity Act ensured that "a person who suffers injuries arising out of patient care would not be disadvantaged by a shortened limitations period simply because he or she happened to obtain treatment at a public facility rather than a private one." <u>Id.</u> In determining the scope of what it meant to "aris[e] out of patient care" for purposes of subsection (b) of the Tort Immunity Act, the <u>Kaufmann</u> court relied on its interpretations of the phrase with respect to the state's medical malpractice statute. <u>Id.</u> The Illinois Supreme Court discussed that it had previously interpreted

the phrase as meaning an injury that is causally connected to the patient's medical care and treatment, but is not so broad as to encompass "but for" causation. Id. Instead, the court limited the phrase's scope to an injury that originated, stemmed, or resulted from the patient's medical care or treatment. Id. at 200-01.

Applying these earlier statutory interpretations to the facts of the Kaufmann case, the Illinois Supreme Court held that the plaintiff's claims of sexual abuse by the treating doctor while under sedation did not fall within subsection (b) because she "did not allege that she was injured because of the medical treatment she received." Id. at 201. The Kaufmann court explained that the plaintiff's claims were not that the medical treatment she received had harmed her in any way, but instead that "the harm resulted from the sexual assault." Id.

As in Kaufmann, plaintiff does not allege that he suffered harm from any medical treatment he received. Instead, plaintiff alleges that his damages arise from the sexual abuse that he suffered at the hands of Thompson. This abuse was "not part of [plaintiff's] medical treatment, but simply a means by which [Thompson] was able to accomplish his sexual assault." Id. at 201. Because plaintiff's claims do not arise from the medical treatment he received, subsection (b) of the Tort Immunity Act does not provide the controlling statute of limitations. Accordingly, Counts V through VII of the first amended complaint – asserted more than a year after the alleged assault occurred – are dismissed as untimely pursuant to 745 ILCS 10/8-101(a).

Count VIII of the first amended complaint, however, seeking indemnification from the Sheriff and Cook County, is not time-barred. A local public entity's obligation to indemnify an employee for actions taken in his official capacity stems from 745 ILCS 10/9-102, which also provides a one-year statute of limitations. Esparza v. Dart, No. 14-CV-1390, 2014 WL 5628050,

6

at *2 (N.D. Ill. Nov. 4, 2014). The statute of limitations for an indemnity claim, however, does not begin to accrue until judgment has been entered against the employee. Id. at *3. This includes indemnification for § 1983 official capacity judgments. Id. Because plaintiff's § 1983 claims against the individual defendants are still pending, the statute of limitations on his indemnification claim has not begun to run.

B.      **Sufficiency of the Complaint**

Defendants argue that the first amended complaint's remaining allegations (pursuant to § 1983) are insufficiently pled, and therefore fail to state a claim upon which relief can be granted.[6] Specifically, defendants complain that the first amended complaint lacks sufficient factual allegations to adequately apprise them of the claims against them. The individual defendants also contend that plaintiff has failed to allege sufficient factual details to show that each defendant was personally involved in depriving plaintiff of his constitutional rights. The Sheriff and Cook County further argue that the first amended complaint fails to state a plausible claim pursuant to Monell – i.e. that their policies caused plaintiff's alleged injuries. The court agrees.

Fed. R. Civ. P. 8 requires a pleading to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the rule reflects a liberal pleading regime, Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009), the complaint still must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotations omitted). "[A]t some point the factual detail in a complaint

---

[6] As discussed above, Thompson has not moved to dismiss Count I and plaintiff concedes that Count IV should be dismissed with respect to Thompson.

7

may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled [to] under Rule 8." Ross, 578 F.3d at 581 (internal quotations omitted). Moreover, a plaintiff must do more to satisfy Rule 8 than "merely parrot the statutory language of the claims that they are pleading," but must instead "provid[e] some specific facts to ground those legal claims." Id. Those factual allegations must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The first amended complaint fails to meet these pleading standards.

### i. Cook County & Sheriff - Counts I-IV

As an initial matter, it is unclear to the court, and surely unclear to Cook County and the Sheriff, which of the first amended complaint's claims are pled against which public entity defendant. For example, Count I of the first amended complaint alleges that "[t]he misconduct described in [the] Count was undertaken pursuant to the policy and practice of the *Cook County Sheriff's Department*." (Emphasis added). Count I neither attributes any policy or practice to Cook County nor identifies Cook County as a participant in the Sheriff's alleged policies and practices. Counts II, III, and IV, however, each allege that "[t]he misconduct described in [the] Count was undertaken pursuant to the policy and practice of the *County of Cook* and the Cook County Sheriff's Department in the manner described more fully above." (Emphasis added). These poorly drafted allegations leave the court unsure as to whether the first amended complaint asserts Counts I through IV against the Sheriff, Cook County, both, or some combination thereof.

Assuming that plaintiff seeks to hold both Cook County and the Sheriff liable for each of his four § 1983 claims, the first amended complaint fails to state a plausible Monell claim

8

against either defendant. As articulated by the Supreme Court, public entities may be held liable under § 1983 for constitutional deprivations pursuant to governmental custom. Monell, 436 U.S. 658. Liability under Monell is established through evidence of: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Waters v. City of Chicago, 580 F.3d 575, 581 (7th Cir. 2009) (internal quotations omitted). Plaintiff argues in his response brief that the first amended complaint properly alleges "a widespread practice, constituting a custom or usage of detainee sexual abuse within the Cook County Jail." The court disagrees.

Contrary to plaintiff's contention in his response brief, the first amended complaint does not allege a widespread practice of sexual abuse at the Cook County Jail. Instead, Count I of the first amended complaint merely alleges that the "misconduct described . . . was undertaken pursuant to the policy and practice of the Cook County Sheriff's Department," which is a legal conclusion, unsupported by any factual specificity. With the exception of adding Cook County to the allegation, Counts II through IV assert identical Monell allegations. The fact that plaintiff was repeatedly assaulted by the same correctional officer over the course of several months is not sufficient to allow the court to draw a reasonable inference that either public entity "maintained a policy or custom that caused the alleged constitutional violation." Maglaya v. Kumiga, No. 14-CV-3619, 2015 WL 4624884, at *3 (N.D. Ill. Aug, 3, 2015) (summarizing the standard articulated by the Seventh Circuit for adequately stating a Monell claim); see also Sheppard v. Village of Glendale Heights, No. 11-C-1044, 2011 WL 6102012, at *4 (N.D. Ill. Dec. 5, 2011) (holding that an allegation that plaintiff was discriminated against on the basis of

her sex and race "pursuant to wide-spread practice" of the defendant village was insufficient to state a Monell claim).

Plaintiff's additional Monell allegations – that the Sheriff fails to adequately train, supervise, or discipline its employees – are also legal conclusions that mirror boilerplate Monell claims and lack any supporting facts. See Foy v. City of Chicago, No. 15-C-3720, 2016 WL 2770880, at *9 (N.D. Ill. May 12, 2016). The first amended complaint does not articulate what training was lacking or how a lack of training, at least in part, caused the improper conduct and constitutional deprivations. Id. Without any factual content supporting his conclusory allegations, the court cannot reasonably infer that the County's or Sheriff's failure to train or discipline its employees caused plaintiff's constitutional injuries resulting from Thompson's alleged sexual assault. Id. In reality, the "[t]he bulk of the [first amended complaint's] 'facts' are just conclusory statements – catch phrases exhumed from other successful Monell cases, strung together in a kitchen-sink pleading approach – that have become all too common in Monell claims raised in non-pro-se § 1983 cases." Maglaya, 2015 WL 4624884 at *5. The only real facts alleged in the first amended complaint relate to the alleged misconduct that plaintiff suffered from, not any "permanent and well-settled" widespread practice. Waters, 580 F.3d at 581. Accordingly, plaintiff's Monell claims are dismissed.

      ii.      **Individual Defendants - Counts II-IV**

As alluded to above, the first amended complaint lacks the factual detail necessary to provide the individual defendants with the notice required by Rule 8. The first amended complaint's factual allegations are limited to two paragraphs within the complaint's "Introduction" section. The remainder of the complaint, with the exception of identifying the

parties, consists of legal conclusions and recitations of the elements of the causes of actions. For example, Count III – asserting a federal conspiracy claim – alleges that "the INDIVIDUAL DEFENDANTS reached an agreement among themselves to deprive Plaintiff of his constitutional rights," and "[i]n furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity." Similarly, Count IV – asserting a federal failure to intervene claim – alleges that "one or more of the INDIVIDUAL DEFENDANTS had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so." Because these "allegations" lack any factual support, the court does not accept them as true. See Iqbal, 556 U.S. at 678-79.

Although the first amended complaint provides factual allegations about Thompson's sexual abuse of plaintiff, such as where it took place and over what time period, it asserts a single, collective allegation against the individual defendants. The only factual allegation directed towards the individual defendants is that they knew or should have known that "Defendant Thompson repeatedly ensured that he was inappropriately alone with Plaintiff while Plaintiff was in the Division #2 Dispensary," but "took no steps to intervene or prevent the abuse from occurring." This allegation, improperly alleged against the individual defendants as a group, is not sufficient to put them on notice of the grounds upon which Counts II through IV rest.

The first amended complaint does not allege that each of the individual defendants worked in or near the Division 2 Dispensary, personally observed the abuse, heard rumors or were told about the abuse, received complaints from plaintiff about the abuse, or otherwise

11

somehow would have known about the abuse. Nor does the first amended complaint provide anything more than a bare recitation of the elements of a conspiracy claim in support of Count III. Without supporting factual detail, the first amended complaint is "so sketchy that [it] does not provide the type of notice of the claim[s] to which the [individual] defendant[s] [are] entitled under Rule 8." Ross, 578 F.3d at 581 (internal quotations omitted). Consequently, the first amended complaint neither plausibly suggests that plaintiff has a right to relief against the individual defendants, Twombly, 550 U.S. at 555, nor allows the court to draw a reasonable inference that the individual defendants are liable for the misconduct alleged, Iqbal, 556 U.S. at 678. Counts II through IV of the first amended complaint, therefore, are dismissed with respect to the individual defendants.

### iii. Thompson – Counts II & III

Defendant Thompson argues that the court should dismiss Counts II and III of the first amended complaint. Thompson contends that Count II, alleging a violation of plaintiff's Fourteenth Amendment right to due process, is improperly asserted against the individual defendants as a group, without identifying what conduct he specifically engaged in that constitutes "arbitrary government action" or "deprived [plaintiff] of his liberty." Similarly, Thompson argues that Count III, alleging that the individual defendants conspired to violate plaintiff's constitutional rights, lacks any factual support for the allegation that he "reached an agreement" with the individual defendants.

Count II of the first amended complaint alleges that "the INDIVIDUAL DEFENDANTS denied Plaintiff due process of law in that they engaged in arbitrary government action that deprived him of his liberty and was so malfeasant as to shock the conscience." The Due Process

Clause of the Fourteenth Amendment provides that "no state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV. The Fourteenth Amendment confers both procedural and substantive rights. United States v. Salerno, 481 U.S. 739, 746 (1987). The "substantive" component of the Fourteenth Amendment's Due Process Clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (internal quotations omitted). More specifically, substantive due process protects against unreasonable government conduct that shocks the conscience or encroaches upon a fundamental right or privilege "implicit in the concept of ordered liberty." Washington v. Glucksberg, 521 U.S. 702 (1997).

Although Count II of the first amended complaint contains scant, if any, factual details in support of plaintiff's due process claim, the factual allegations contained in the complaint's "Introduction" section are sufficient to state a due process claim against Thompson. Specifically, plaintiff alleges that Thompson used his position as a correctional officer to repeatedly sexually abuse him. These allegations, with all reasonable inferences drawn in plaintiff's favor, as the court must do at this stage, are sufficient to put Thompson on notice that his actions of sexually assaulting plaintiff deprived plaintiff of his liberty to be free from such abuse. Consequently, the court denies Thompson's motion with respect to Count II.

Thompson's motion with respect to Count III, however, is granted. As discussed above with respect to the individual defendants, the first amended complaint does not provide any factual detail to support its conclusory allegation that Thompson entered into a conspiracy with the individual defendants to deprive plaintiff of his constitutional rights. Instead of "providing

13

some specific facts to ground" his conspiracy claim, plaintiff "merely parrot[s] the statutory language of the claim[]." Ross, 578 F.3d at 581. The only actual facts alleged in the first amended complaint concern the sexual abuse Thompson committed against plaintiff. Other than alleging that such an agreement was made, the first amended complaint does not provide any factual details concerning the specifics of the agreement such as when it was made or what it entailed. See, e.g., Evers v. Reak, 21 Fed. App. 447, 450 (7th Cir. 2001) (affirming dismissal of plaintiff's conspiracy claim where "he did not specifically allege the what, when, why, and how of the defendants' supposed agreement to deprive him of his constitutional rights." (Internal quotations omitted)). Because the first amended complaint lacks any factual detail to support an inference that Thompson entered into such an unlawful agreement, Count III is dismissed for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part: (a) Counts I through IV are dismissed with respect to Cook County and the Sheriff; (b) Counts II through IV are dismissed with respect to Brazelton, Felix, Vasquez, Mari, and MacNeal; (c) Counts III and IV are dismissed with respect to Thompson; and (d) Counts V through VII are dismissed with respect to all defendants. The report on status previously set for September 8, 2016, is stricken. Thompson is ordered to answer Count II of the first amended complaint by September 28, 2016. Cook County and the Sheriff are ordered to answer Count VIII of the first amended complaint by September 28, 2016. The remaining parties are directed

14

to file a joint status report using this court's form by October 3, 2016. This matter is set for a report on status on October 11, 2016.

**ENTER:** **September 6, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**