IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN HOLLIMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DENNIS THOMPSON, | ) |
| former Cook County Sheriff's deputy, | ) |
| | )  Case No. 15 CV 9050 |
| Defendant, | ) |
| | )  Judge Robert W. Gettleman |
| and | ) |
| | ) |
| SERGEANT BRAZELTON, | ) |
| Cook County Sheriff's deputy, and | ) |
| COOK COUNTY, ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

When plaintiff John Holliman was a pretrial detainee at Cook County Jail, he allegedly was sexually abused 40 times by defendant Officer Dennis Thompson. Suing under 18 U.S.C. 1983, plaintiff brings in his second amended complaint claims against Thompson and his supervisor, Sergeant Charles Brazelton, for depriving him and conspiring to deprive him of his constitutional rights. He also brings a claim against Cook County—Thompson's former employer, Brazelton's current employer—seeking indemnification, arguing that the County must pay for any judgments entered against Thompson and Brazelton.

Thompson, Brazelton, and Cook County move for summary judgment. Thompson argues that no reasonable jury could find that he caused plaintiff's injuries—including, among other things, rectal pain and suicidal ideation—because plaintiff has yet to retain a damages expert. The

argument is frivolous and the motion is denied. Brazelton argues that the evidence against him is purely circumstantial and thus is insufficient to sustain plaintiff's claims for conspiracy and for direct liability under the Fourteenth Amendment. The court agrees that a jury could not find that Brazelton conspired with Thompson to deprive plaintiff of his constitutional rights. A jury could, however, find Brazelton directly liable for recklessly disregarding the consequences of not intervening. Brazelton's motion for summary judgment is therefore denied. Cook County argues that sexual assault is categorically outside the scope of employment under Illinois law, so it need not indemnify Thompson. The court agrees. The County, however, concedes that Brazelton's acts were within the scope of employment, so the court grants its motion only as to Thompson and denies it as to Brazelton.

## **LEGAL STANDARD**

Summary judgment is proper when no material fact is genuinely disputed and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the evidence as a whole and draws all reasonable inferences in the light most favorable to the non-moving party. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A material fact is genuinely disputed if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party must, however, "do more than simply show that there is some metaphysical doubt about the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence" supporting the non-moving party is not enough. Anderson, 477 U.S. at 252.

## DISCUSSION

A person deprived of a constitutional right may sue under 42 U.S.C. § 1983. Two such rights are identified in plaintiff's second amended complaint: his Fourth Amendment right to be free from unreasonable searches and seizures, and his Fourteenth Amendment right to due process of law. The constitutional rights of a pretrial detainee, however, are governed only by the Fourteenth Amendment. Collins v. Al-Shami, 851 F.3d 727, 731 (7th Cir. 2017). The court therefore dismisses plaintiff's Fourth Amendment claim against Thompson and treats his Fourth Amendment claim against Brazelton as a Fourteenth Amendment claim. See Fed. R. Civ. P. 15(b) ("[W]hen issues not raised by the pleadings are tried by . . . implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."), discussed in Torry v. Northrop Grumman Corp., 399 F.3d 876, 879 (7th Cir. 2005) (rejecting the argument that an employee was required to amend her complaint before summary judgment, reasoning that "[t]he defendant went through four years of discovery . . . without objecting to the fact that its opponent was patently engaged in endeavoring to prove racial as well as age discrimination").

That leaves the following claims for summary judgment: (1) a Fourteenth Amendment claim against Thompson; (2) conspiracy and Fourteenth Amendment claims against Brazelton, and (3) indemnification claims against Cook County for both Thompson and Brazelton.

**1       Officer Dennis Thompson**

Thompson, citing irrelevant state law, argues that no reasonable jury could find that he caused plaintiff's injuries because plaintiff has yet to retain a damages expert. The argument is frivolous. Thompson's motion for summary judgment is denied.

3

First, as plaintiff correctly notes, the argument is premature. Magistrate Judge Weisman stayed discovery on "mental health damages, including a potential independent medical examination and expert witness," until this court ruled on the parties' motions for summary judgment. In fact, plaintiff represents that Judge Weisman stayed discovery at Thompson's request—a representation that Thompson does not challenge in his reply.

Second, a reasonable jury does not need expert testimony to find causation. Plaintiff testified in his deposition that Thompson's sexual abuse caused him nightmares, rectal pain, and panic attacks; he later tried to commit suicide. Although Thompson argues all that was caused by plaintiff having previously been raped and plaintiff's preexisting bipolar disorder, a jury could easily find that Thompson's abuse caused additional harm. See, e.g., United States v. Balistrieri, 981 F.2d 916, 932 (7th Cir. 1992) ("The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress . . . ."), cited in Krueger v. Cuomo, 115 F.3d 487, 492 (7th Cir. 1997) ("It demands little in the way of either empathy or imagination to appreciate the predicament of a woman who is harassed in full view of her children . . . . She was not required, as [her landlord] appears to believe, to call an expert witness.").

## 2  Sergeant Charles Brazelton

To be an inmate worker means freedom of movement, a modest salary, the occasional phone call, and an extra lunch: it is to hold the most valued of positions in Cook County Jail. No inmates, however, were authorized to work in the dispensary on the first floor of Division 2, Dorm 2, where inmates went for psychiatric care. Thompson nonetheless hired plaintiff to work in the dispensary. Unlike the hallway leading up to it, the dispensary was unmonitored by video. It was there that Thompson sexually abused plaintiff 40 times.

Thompson's supervisor, Brazelton, knew that Thompson had hired plaintiff to work in an unauthorized position and in an unmonitored location. He sometimes visited the dispensary and saw them there together. Even though he had the final say over plaintiff's work assignment, Brazelton did not remove plaintiff from the dispensary. Nor did he ask Thompson what he was doing with plaintiff or ask why he chose plaintiff to work for him.

Brazelton was told by an officer that another inmate worker, Aaron Roundtree, had handwritten plaintiff's name on a computer-generated list of inmates to be brought to the dispensary. Roundtree's job was to take this list from the dispensary's "psych officer"—which was Thompson—and bring the list to officers in the dormitories. Those officers would then bring listed inmates to the dispensary. Brazelton, after having been told by a dormitory officer that Roundtree had handwritten plaintiff's name on the list, saw Roundtree in the dispensary hallway. Brazelton told Roundtree, "Don't worry about it"—which, plaintiff argues, implies that Brazelton knew the person who handwrote plaintiff's name was not Roundtree, but Thompson.

According to plaintiff's correctional practices expert, Richard Bard, Brazelton deviated from acceptable jail standards by "creat[ing] or ignor[ing] the numerous 'red-flags' that marked the inappropriate actions by Defendant Thompson with Plaintiff, despite known and obvious consequences of such circumstances in a jail setting." (Brazelton and Cook County's motion to bar Bard's testimony was denied in a separate order, Doc. 225.) Bard identified four red flags: (1) Brazelton assigned Thompson to his post in the dispensary, and that assignment was unauthorized; (2) Brazelton should have been suspicious of Thompson's use of plaintiff as an inmate worker, given plaintiff's high bond status and mental health issues; (3) Brazelton should have been more inquisitive about what Thompson and plaintiff were doing together; and

(4) Brazelton must have known that Thompson, by handwriting plaintiff's name on list of inmates to come to the dispensary, was specially requesting plaintiff's presence.

Plaintiff accuses Brazelton of conspiring with Thompson to deprive him of his constitutional rights. In the alternative, he argues that Brazelton, knowing that plaintiff was in a position to be sexually assaulted, turned a blind eye and allowed the assault to happen. Although plaintiff did not allege this alternative theory in his complaint, Brazelton does not argue that he has forfeited it. And for good reason: the Federal Rules of Civil Procedure require plaintiffs to plead facts, not legal theories, and district courts therefore "should not hold plaintiffs to their earlier legal theories unless the changes unfairly harm the defendant . . . ." Chessie Logistics Co. v. Krinos Holdings, Inc., 867 F.3d 852, 859 (7th Cir. 2017).

Brazelton does not argue that he has been unfairly harmed. Indeed, he implicitly concedes in his reply that because the evidence against him is circumstantial, it overlaps both theories: "Plaintiff adduces no specific evidence in support of his claim . . . whether in a conspiracy with Defendant Officer Thompson, or via a purported (and newly alleged) 'culpable indifference to the risk of rape.'" Both theories—conspiracy, and direct Fourteenth Amendment liability for culpable indifference—are therefore before this court.

### 2.1 Conspiracy

Plaintiff's section 1983 conspiracy claim survives summary judgment if a reasonable jury could find that Brazelton and Thompson agreed to deprive plaintiff of his constitutional rights. Hill v. Shobe, 93 F.3d 418, 422 (7th Cir. 1996). No reasonable jury could so find.

Taken in the light most favorable to plaintiff, Brazelton knew that Thompson hired plaintiff to a position that did not exist, that Thompson handwrote plaintiff's name on the list of inmates to be brought to the dispensary, and that Thompson and plaintiff were sometimes alone

in the back of the dispensary, where there were no cameras. A reasonable jury could no doubt find that Brazelton's inaction under the circumstances was negligent or reckless—or worse, that he conspired with Thompson to give him time alone with plaintiff.

Conspiring to give Thompson and plaintiff time alone, however, is not conspiring to deprive plaintiff of his constitutional rights. Conspiracy liability under section 1983 cannot lie unless the conspiracy has an unconstitutional objective. See Hill, 93 F.3d at 422 ("[T]here is no constitutional violation in conspiring to cover up an action which does not itself violate the constitution.") Conspiring to sexually assault or otherwise exact violence on plaintiff certainly would do, Farmer v. Brennan, 511 U.S. 825, 841–43 (1994), yet there is no evidence that Brazelton agreed to help Thompson sexually assault plaintiff or even any evidence that they ever spoke about him. There is much evidence, on the other hand, that Brazelton tacitly agreed to help Thompson fraternize with plaintiff—and such fraternization, Brazelton concedes, is inappropriate—but helping to facilitate inappropriate fraternization does not a constitutional deprivation make.

### 2.2     Fourteenth Amendment

The same facts, however, do plaintiff better on his Fourteenth Amendment claim of "culpable indifference," which, properly understood, is a claim of "reckless disregard." Culpable indifference is a misnomer: it evokes the Eighth Amendment standard of "deliberate indifference," which applies to the treatment of convicted prisoners. The treatment of pretrial detainees like plaintiff, on the other hand, is governed by the Fourteenth Amendment. Collins, 851 F.3d at 731. For plaintiff to survive summary judgment, a reasonable jury need not be able to find that Brazelton was deliberately indifferent, but only that, (1) he recklessly disregarded the consequences of failing to act, and (2) his failure to act was objectively unreasonable. Miranda v.

7

Lake County, 900 F.3d 335, 352–54 (7th Cir. 2018), citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472–75 (2015).

Because a reasonable jury could so find, Brazelton's motion for summary judgment is denied. Even though sergeants like Brazelton are trained to look out for signs of abuse between officers and inmates, and even though Brazelton had authority over both Thompson and plaintiff, he never once talked to Thompson about his use of plaintiff in the dispensary or ask Thompson why he chose plaintiff to work for him. He did not know whether Thompson and plaintiff were ever alone together. Brazelton did know, however, that Thompson specially ordered plaintiff to the dispensary by handwriting his name on a list. Brazelton also knew that inmates were not authorized to work in the dispensary. And Brazelton knew that the dispensary was unmonitored by video. A reasonable jury presented with these facts could find that these circumstances "placed him in the best position to know that a constitutional deprivation had occurred and while he had the authority to remedy the situation, he did nothing." Chapman v. Pickett, 801 F.2d 912, 918 (7th Cir. 1986), vacated and remanded on other grounds, 484 U.S. 807 (1987).

**3       Cook County**

Cook County moves for summary judgment on plaintiff's indemnification claims, arguing that it need not indemnify Thompson or Brazelton. The court denies summary judgment as to Brazelton. Cook County concedes that his acts were within the scope of his employment, but argues that those acts were not tortious. As discussed, however, a reasonable jury could find that Brazelton's acts were indeed tortious.

The court, however, grants summary judgment for Cook County as to Thompson because Thompson's alleged sexual assaults of plaintiff were not within the scope of his employment. See Martin v. Milwaukee County., 904 F.3d 544, 556 (7th Cir. 2018) ("[U]nder Illinois law, sexual

8

assault categorically is never within the scope [of employment]."), citing Johnson v. Cook County, 526 Fed. Appx. 692, 697 (7th Cir. 2013) (collecting cases and affirming summary judgment against a prisoner who brought a respondeat superior claim after having been sexually assaulted by a Cook County Jail medical technician). "[S]exual assault by its very nature," according to Illinois courts, "precludes a conclusion that it occurred within the employee's scope of employment . . . ." Doe v. Lawrence Hall Youth Services, 2012 IL App (1st) 103758, ¶ 30 (emphasis in original); id. at ¶¶ 28–29 (collecting cases). Giving "great weight to the holdings of the state's intermediate appellate courts," as this court must, Allstate Insurance Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002), Thompson's alleged sexual assaults, as a matter of law, were not within the scope of his employment.

Plaintiff persuasively argues that Thompson's abuse was possible only by virtue of his overwhelming authority over prisoners—authority given to him by Cook County—and that sexual violence, wielded as an exercise of authority, is violence no different than the more pedestrian kinds that courts regularly find to be within the scope of employment. E.g., Javier v. City of Milwaukee, 670 F.3d 823, 832 (7th Cir. 2012) (reversing an indemnification verdict because the jury was not instructed that a police officer's conduct—lethally shooting an unarmed man—"could be criminal, excessive, and outside his authority and still be within the scope of his employment"). Those arguments, however, are best directed at the Illinois courts.

## **CONCLUSION**

Defendants Dennis Thompson and Charles Brazelton's motions for summary judgment (Docs. 164 and 170) are denied. Defendant Cook County's motion for summary judgment (Doc. 170) is granted as to Thompson, but denied as to Brazelton. Three claims remain: (1) a Fourteenth Amendment claim against Thompson; (2) a Fourteenth Amendment reckless disregard

9

claim against Brazelton, and (3) an indemnification claim against Cook County for Brazelton's conduct. This matter is set for a report on status on April 10, 2019, at 9:10 a.m.

**ENTER:** **March 26, 2019**

Robert W. Gettleman
United States District Judge